United States Court of Appeals for the Ninth Circuit is now in session. Good morning I'm Judge Bennett and with my colleagues Judge Miller and Judge Sung welcome to the Ninth Circuit. We have one case on the argument calendar today Governor Gavin Newsom et al versus President Donald J Trump et al. The oral argument is set for one hour 30 minutes aside and let me just make sure with counsel. Mr. Shumate can you hear us? Yes your honor. Good afternoon. Good afternoon. Mr. Harbord can you hear us? Yes I can. Great all right when the appellant is ready to proceed you may begin. Thank you your honor. May it please the court Brett Shumate on behalf of the federal defendants from the U.S. Department of Justice if I may I'd like to reserve five minutes for rebuttal. Okay. Thank you. The court should immediately say the district courts extraordinary order because it interferes with the president's commander-in-chief powers based on an erroneous interpretation of the applicable statute. It upends the military chain of command. It gives state governors veto power over the president's military orders. It puts article 3 judges on a collision course with the commander-in-chief and it endangers lives. Even California concedes that there is ongoing civil unrest in Los Angeles but this is no ordinary civil unrest. As we've explained in the Santa Cruz declarations federal personnel continue to face the stained mob violence in Los Angeles expressly aimed at preventing federal officers from enforcing federal law. Unfortunately local authorities are either unable or unwilling to protect federal personnel and property from the mob violence ongoing in Los Angeles today. Under these conditions the president acted well within his discretion in calling up the guard. Based on his determination that the violent riots in Los Angeles constitute a rebellion against the authority of the United States it rendered him unable to execute federal laws. Yet the district court improperly second-guessed the president's judgment about the need to call up the guard in order to protect federal property and personnel from mob violence in Los Angeles. So I want to start by drilling down in on one aspect of our standard of review and I'm going to be discussing subsection 3 only of section 1 2 4 0 6 and you just said the president acted well within his discretion and again just as to section 3 is it the United States's position that the court has no role at all in reviewing what the president has done in calling forth the militia under subsection 3 or is it the United States's view that the court has a limited role and it needs to afford the president very substantial deference or is it something else in deciding whether the requirements of subsection 3 and ability with the regular forces to execute the laws is met. Thank you your honor our view is that this statute commits the decision whether to call up the forces to the president's unreviewable discretion so no there's no role for the court to play in reviewing that decision and I think it's important to note that the statute here is very similar to the statute at issue in the Martin case that we've cited the act of 1795 which has had a similar structure and had the where whenever clause followed by a delegation to the president to call up the militia and in that case the Supreme Court in 1830 said that's a decision that's committed to the president's discretion it's not for a court to review that decision the plaintiffs try to make out that decision as an outlier but of course there have been many cases since then involving unreviewable decisions committed to the executive the last we decided cited is the Dalton case. Is it your view that if the president or a future president simply invokes the statute gives no reasons for doing it provides no support for doing it and there is nothing which would appear to a court to justify it that the court still has no role at all in determining whether the present president this hypothetical future president correctly invoked subsection 3 no role at all even if the president gives no reasons and there are no facts offered by that president to support that president's decision? That's correct because if the statute is unreviewable it's unreviewable and I would point the board to the last section of the decision in Dalton where the Supreme Court recognized yes Marbury vs. Madison says the court decides what the law is but it also respects that principle when a court recognizes that when a statute is delegating broad discretion to the president that that respecting that also is a judgment that a court should respect it respects the separation of powers when Congress delegates that decision to the president but I think your honor you're speculating about harder cases down the road this is an easier case because there are facts in the record here that strongly support the president's decision that there was a rebellion and that the president was unable to execute federal laws under the third problem we're focused on here today. And what if would your answer to Judge Bennett's question be the same if in the hypothetical the president articulated a justification for his action that was not one of the enumerated purposes in 12406? Again I think it would give you the same answer your honor that if it's unreviewable it's unreviewable. The Martin case also acknowledged yes there can be cases where discretion can be abused but in that situation there are other checks in the president through the political process it's not for a court to exceed its authority just because there may be hypothetical cases in the future where the president may abuse his authority. The president hasn't done that here. No go ahead sir. So suppose that we suppose that we don't agree that the question is completely unreviewable what what does it mean for the president to be unable with regular forces to execute the laws? It means in his judgment the regular forces on the ground in Los Angeles are adequate and sufficient for him in his judgment under the Take Care Clause of the Constitution to carry out the laws and enforce the laws and in here I think the Santa Cruz declarations make that pretty clear. Paragraph 7 for example talks about specific immigration enforcement actions that were unable to be accomplished because of the mob violence preventing ICE officers in Los Angeles from carrying out those those actions. But I mean the in the normal course the level of resistance encountered by federal law enforcement officers is not zero right you you go to arrest people and sometimes they don't want to be arrested and they they run away or even resort to violence and sometimes they get away. So does that mean that the president you know every day is unable to execute the laws and he could invoke this you know whenever? Well I think let's remember the president also takes an oath to support and defend the Constitution. He has an obligation to take care that the laws are faithfully executed and I would point the court to the language about the regular forces right that I think provides some guidance to the president about look if regular forces are capable of addressing you know the one-off situation where there's resistance to federal authority there's no need to invoke this statute. But what we have here is a documented record of sustained ongoing mob violence continuing through this past weekend in the supplemental declaration that we filed that explained there were a thousand violent protesters this past weekend outside the federal buildings and it required the National Guard. They were essential to protect that building from the breaches that had occurred the prior weekend. So is the United States still arguing that this case is governed by the political question doctrine? I think that's an alternative argument. The argument we're pressing today and in our motions paper papers are you know the Dalton and Martin line of cases that this statute confers unreviewable discretion on the president. With regard to your alternative argument about the political question doctrine are you aware of any Supreme Court or Court of Appeals case in which the political question doctrine has been applied to a claim alleging that the executive branch violated a statute? I don't know off the top of my head Your Honor. Again the argument that we're pressing today is based on Dalton and Martin that the statute here confers unreviewable discretion on the president. We're not, at least for purposes of this motion, we're not pressing the political question doctrine. Are you familiar with the 1932 Supreme Court case of Sterling versus Constantine? I'm not familiar with that case Your Honor. All right I would just note that in that case in discussing this power of the president and prior cases the court said the nature of the power also necessarily implies that there is a permitted range of honest judgment as to the measures to be taken in meeting force with force and restoring order. And I'm not going to ask you further about the case since you're not familiar with it but I take it the United States's position again an answer to Judge Miller's question is even if we reject your view that it's absolutely unreviewable within the language I just read it's the United States's view that the facts here fit comfortably within that language. I think that's right Your Honor. Again so even assuming this this is not a political question and that this is something that wouldn't fall within that line of cases, there is this line of cases of Dalton and Martin involving statutes that delegate broad discretion to the president. There's a long history of courts not reviewing the president's discretionary decisions and I would point you to the language of this particular statute says the president may call into federal service members and units that he deems necessary right so that is it that is an express delegation of Congress's power to call up the militia to the president. It's in such numbers as he considers necessary right? Correct. So the president has the discretion to decide what level of forces are necessary to counter the threat and the threat is in the last phrase of that first sentence necessary to repel the invasion suppress the rebellion or execute those laws and in the president's judgment 2,000 National Guard Guardsmen from California are necessary to execute the laws in California and the record bears that out based on the fact that we have declarants from ICE explaining that the National Guardsmen are essential right now to protect the federal buildings from additional breaches and violent rioting involving fireworks Molotov cocktails concrete chunks being thrown at ICE officers or just simply trying to prevent individuals from interfering with enforcement operations and trying to breach the buildings. So suppose suppose that we had a hypothetical where suppose there was no no violence no organized opposition at all everything is calm in Los Angeles and the president says you know I've decided that there is a numerical target for the number of removals I would like to have and with the number of ICE officers that I'm able to hire using the funds that Congress has appropriated I can't hit that target therefore I find that I'm unable to execute the laws and so I need to call up the National Guard under section 6. Setting aside I understand your first line argument that the judgment is completely unreviewable do you think that would meet the definition of unable to execute the laws? It certainly could be again it would follow from the president's discretion based on the facts available to him if we're in a world where this is not reviewable then that would be a decision that the president could make and if it's an abuse of that authority there are measures to or means by which the other branches Congress can check that decision but I think the conditions also suggest sometimes some type of intervening event rather than an election right like invasion in the first prong suggests there's some type of activity that interferes with with the security of the United States the second prong rebellion that rises up the third prong some some external force or activity right that that requires the president to act not an election but mere mere dissatisfaction with the you know the the the level of the regular forces that Congress had provided would not be enough under that definition I wouldn't I wouldn't want to concede that your honor I think that would be the president's decision based on all the facts available to him and the record may support it in a particular case but obviously that's not what happened in this case the president so so so counsel let me let me ask a question based on judge Miller's hypothetical so let's but but let's let's let's take a look at the facts that judge Miller posited and let's say that the problem was limited to California that there was nothing to suggest that the problem was beyond California in your view if the part if a hypothetical future president made the decision to call up in response the militia of every state and the District of Columbia so 51 militia would it also be your view that that decision by this hypothetical future president would be entirely unreviewable yes because the statute says the president may call into federal service members and units of the guard of any state in such numbers that he considers necessary that is a an delegation that couldn't be any more clear that the president gets to decide how many forces are necessary to quell the rebellion to execute federal laws but again bringing back to this case that of course that's not what he did in this case he only called up 2,000 national guardsmen the Secretary of Defense thought it was necessary to call up an additional 2,000 and the facts on the ground have justified that decision those guardsmen are necessary on the ground today to prevent breaches of the federal buildings to protect ice officers when they are conducting their law enforcement operations the guardsmen are not conducting law enforcement they are charged with a protective mission not a law enforcement issue I'm happy to talk further about the conditions but I also like to talk about the second issue that the district court focused on which was whether the Secretary of Defense committed a technical violation of the California governor as you know that the district court found that the Secretary of Defense committed a procedural footfall by not issuing the orders through the California governor but under the statute the governor is merely a conduit not a roadblock or a co-executive when the president decides that it's necessary to call up the guard and in this case the Secretary of Defense complied with title 10 by issuing the orders through the governor via the adjutant general in California who is the governor's chief of staff for these purposes and is delegated authority under California law to issue orders in the name of the governor and I think the facts bear out that that was the right decision and the right procedure to follow because the California adjutant general followed the order forward the order to Governor Newsom and the order was complied the whole point of this element of the statute is to ensure that there's a smooth handoff in the forces from the state yeah so I'm gonna ask a variant of this question to your friend when it's his turn but do you read in the district courts order on this point a definitive statement of what it was that the secretary should have done to comply with this supposed requirement that obviously the district court found that sending it to the adjutant wasn't sufficient but do you see how does the United States interpret the order in terms of the specificity of this wasn't enough how does the United States interpret the order of what would have been enough to comply with this I think it's unclear it's unclear whether he meant that we should have copied Governor Newsom on the email but he didn't say that he but he agreed with us that disagree with California that the statute does not contain an approval requirement or a consultation requirement but at the end of the day I think that's what the district were imposed by saying you can't issue it through the adjutant you got to issue it through the Governor Newsom in which case what's the point right we're gonna get to the same place because the has no discretion under the second element sentence of the statute he shall issue the order right so even if we sent that email to Governor Newsom we'd get to the same place he would be required to send that order to the adjutant and we'd be in the exact same place today I understand the United States's argument there was no technical violation here but even if there were a technical violation the remedy imposed by the district court was all out of supposed wrong exactly right so at the district court hearing even asked that the district court if you think there's a technical violation of the statute give us a chance to cure right we'll send the right email whatever you think we need to do we can do that this report did not give us that opportunity instead the court issued an extraordinary injunction that basically vacated the president's decision orders him to reverse his order and surrender control over a portion of the armed forces back to the California governor that is an extraordinary order and remedy wholly out of proportion and under the winter case really about the equities here are totally imbalanced for all the reasons we've explained in our declarations given the mob violence and the threats that if this order is goes into effect there will be it will be putting lives at risk and federal property at risk as well so counsel you know you may not know the answer to this question and it may not be in the record but I'm asking about sort of current conditions as the United States has pointed out the proposed order that the state asked the district court to impose says in it that the order doesn't prohibit the force from providing indirect assistance to federal officials protecting federal property defending federal officials or from threatened physical harm etc is right now are the forces doing materially more than what was in that carve out that the state had proposed yes your honor and I think that's clear from both the Nell declaration and the supplemental declaration from General Sherman that we submitted just with our reply brief it explains not only are the guardsmen correcting the protecting the but also performing kind of escort function when ICE agents go outside of the federal buildings they are setting up a perimeter so those those officers aren't salted by mobs when they're trying to enforce federal immigration laws so even that proposed order would have been an extraordinary intrusion as well or even if that proposed order had been entered the United States would as of now be doing things that would have been barred by that order yes okay thank you in your view is there is there any issue under the posse commentatus act before us in the current posture of this case no your honor the district court ruled for us on that issue at this stage in the TRO opinion I don't understand the state to resurrect that argument for purposes of the state I'm happy to address it but I mean the point that we made in district court was that there is no violation of the posse commentatus act the orders are very clear that the guardsmen and the Marines are engaged in a protective mission that falls within the president's inherent power it does not they're not engaged in direct law enforcement and I think the declarations from from Nell and the other general that we submitted make clear that that the guardsmen and the Marines are carrying out those orders faithfully consistent with statute but your view is that there's no need even for us to say that much because the issue just isn't here that's great council did you want to and I know we've asked a lot of questions did you want to briefly address or however long you want to address the Tenth Amendment issue your honor I don't think there's much to say because I think it's completely derivative of the statutory question I think the district court ultimately recognized that at the end of that portion of his opinion I think the state recognizes that as well if the president acted consistent with the statute here then he's acting consistent with the Constitution because the militia clauses authorized Congress to delegate to the president the authority to call up the guard if he permissibly called up the guard of course there's no Tenth Amendment problem here yeah I I read the district courts order as I believe you do or the district court explicitly recognized that if the district court had gotten it wrong on the president's authority to call up the guard that the Tenth Amendment calculus would be materially different it might well weigh in the president's favor I think that's what I mean there's there's no Tenth Amendment issue here if the president is acting consistent with the statute I'm happy to answer any further questions if the court has no other questions I'd like I'd like to talk about kind of the situation on the ground in Los Angeles today and walk the court through some of our declarations unless the court has any other questions on those statutory issues I'm fine with your doing that and I know Judge Miller and Judge Sung will ask questions if they feel it appropriate but I'm fine with your turning to that thank you I just want to emphasize how crucial the Santa Cruz declarations are it's that the first one is that page 235 of the addendum the second declaration is attached to our reply brief and it explains the danger right now on the ground in Los Angeles to federal officers and property from the mob violence and disorder paragraph 7 of that declaration the original one explains how a violent mob tries to prevent ICE officers from conducting immigration enforcement operations on in Los Angeles on Friday June 6th immediately prior to the president's invocation of this statute paragraphs 9 through 17 then go on to explain a extremely dangerous situation involving violent and riotous demonstrators threatening to breach the federal building in Los Angeles that evening where ICE was detaining illegal aliens and federal officers were pinned down and severely outnumbered it also explains how federal officers had to hold the building by themselves because it took over an hour and a half for local authorities to provide support and assistance to the federal officers. Paragraphs 18 through 20 describe what happened Saturday June 7th the day the day the president issued the order seven hours of constant fighting non-stop between ICE agents and a violent crowd it disrupted an immigration enforcement operation planned for that day one officer was trapped inside her vehicle another shattered his or her wrist because of concrete blocks that are being thrown mortar style fireworks paragraph 33 of that declaration I think is essential here it concludes quote I believe the safety of local federal facilities and the safety of those conducting immigration enforcement operations in this area of responsibility requires additional manpower and resources end quote. That was a week ago the supplemental declaration confirms the situation on the ground has not changed there's still ongoing violence and an extraordinary need for the guard in Los Angeles even today. Paragraph 4 explains that the federal building in Los Angeles the one that had been breached the week before has still been closed since June 9th and again concludes that the guard is essential to protecting that property. Paragraph 6 I think is also crucial explains that there are continuing violent protests at federal facilities throughout Los Angeles including this past weekend June 14th there were a thousand people assaulting law enforcement a violent mob with rocks bricks fireworks an extraordinary scene that declaration concludes in paragraph 7 through 14 that the guard is essential to continuing to safely enforce immigration laws and protecting federal buildings in Los Angeles. I just commend to the court it is essential that this injunction be stayed otherwise lives and property will be at risk the court has all right do you want to reserve the remainder of your time yes thank you your honor all right we'll we'll now hear for the attorney for him for the governor and the state of California good afternoon your honors and may it please the court Samuel Harbert on behalf of the governor and state of California defendants motion for a stay pending appeal should be denied the framers of our Constitution gave Congress the authority to enact statutes governing when the president may call forth a state's National Guard into federal service the only statute invoked here 10 USC section 12406 requires that one of three factual predicates exist before that authority may be exercised and requires that the federalization order be issued quote through the governor but on June 7th for the first time in our nation's history defendants federalized thousands of members of the state National Guard in circumstances where none of those factual predicates exist and they circumvented the governor who did not receive the order and who certainly did not issue it for those reasons the district court rightly held that the state is likely to prevail in showing that these actions exceeded the proper bounds of executive authority in each of the equitable factors counsels strongly against a state pending appeal which would allow defendants to prolong this unprecedented unlawful executive action to be sure Los Angeles has seen certain episodes of unrest and even violence in recent days including violence directed at state and local law enforcement officials the state has strongly condemned these these acts and it has responded forcefully to them and I would appreciate the opportunity at some point in my time this afternoon to respond to the suggestion from the other side the state has been unwilling or unable to respond a state pending appeal would profoundly injure the state of California and our nation more generally it would allow defendants to continue diverting thousands of guardsmen away from critical work at the state level including wildfire prevention and drug interdiction it would allow defendants to further escalate tensions and the risk of in the city of Los Angeles and it would defy our constitutional traditions of preserving state sovereignty of providing judicial review for the legality of executive action of safeguarding our cherished rights political protest and if keeping us all right counsel I want to start with one part of the district courts order and as I read the district courts order on page 23 of the order I believe it's denominated a 283 in in the record I read the district courts order as saying that as long as the president can in some way or manner execute the laws of the United States that subsection 3 of 12406 isn't met that although there's no numbers in there it suggests that if the president can 50% execute the laws or 70% or 80% or maybe even 15% that the that this isn't met and that what is required is that the president be wholly unable to execute the laws of the United States for him to be able to invoke the statute so my first question is am I reading the district courts order right if I'm not please tell me where I am where I'm wrong and if I am reading it right does the does California agree with the district courts reading of the statute your honor I'm not sure that the district courts analysis there needs to be read so expansively and the state is certainly not asking the court to adopt that interpretation of prong three all we're asking the court to conclude at least at this very early stage of the litigation is at a bare minimum for prong three of the statute to exert any meaningful limit on executive authority in this area it has to mean more than what defendants are suggesting it has to at least mean that the president comes forward with some attempted justification or at least an attempt to exhaust or or at least contemplate more modest alternatives than immediately reaching for the most but but going back to a case that the United States cites Martin V Ma I mean one of the things the court said in that case is we are all of opinion that the authority to decide whether the exigency has arisen belongs exclusively to the president and that his decision is conclusive upon all other persons and the court was including itself in the all other persons even if we were to agree with you that there is some limited role of judicial review how can with the facts here and the language in Martin V Ma how can that test be met here by the state to justify an injunction against the president's actions your honor I'd like to respond to Martin and then also explain why the state believes the modern language of section 12406 can't support the highly deferential essentially unchecked view of authority under the third prong of the statute that the government is advancing here so as to Martin it was a very different case that involved the determination of a foreign invasion it's also decided many years ago well before the emergence of modern political question doctrine cases like Zivotofsky which say that when a court is addressing a core legal issue like interpretation of a statute as here or the Constitution that is a core exercise of judicial review it's something that courts have a virtually unflagging obligation to do when they have jurisdiction and I would add as to Martin your honor the government has been making a very similar argument based on that case in the Alien Enemies Act context across the country and as far as I'm aware courts have uniformly rejected the government's very similar argument invoking Martin in that context which involves the Alien Enemies Act which implicates at least something closer to the types of foreign policy or national security considerations that have traditionally led courts not to deem cases justiciable so so if we were to agree with you that there is some judicial review here how much discretion if any does California believe the president's judgment that this is necessary for him to comply with the care clause and to take care that the laws be faithfully executed how much discretion does he have in California's view under this statute and deciding when to federalize your honor with two answers so I do think looking at the text of section 12406 it's important to recognize that this statute illustrates congress knows how to accord substantial discretion to the president when it wants to do so because it it does accord that type of discretion after a properly made consistent with the factual predicates in terms of the numbers of troops that the president deems appropriate to respond to the situation that justified federalization you don't see that language in the factual predicates justifying the initial federalization decision and it's an established feature of statutory interpretation that when congress uses language in one part of the statute but omits it in another courts presume that the omission is intentional does that does that mean we were I'm sorry go ahead sorry we were writing on a blank slate I would tend to agree with you but the problem that I see for you is that Mott seemed to be dealing with very similar phrasing about whenever there is an invasion then the president has discretion and it seemingly rejected the exact argument that you're making and and seemed to broadly hold that even with that turn of phrase and that structure of the sentence congress was essentially giving the president the authority the exclusive authority to determine whether the exigency existed so how do you deal with that your honor two very important distinctions with Mott the first is one I mentioned a moment ago which is the determination about a foreign invasion implicates sensitive foreign policy I understand the factual difference but I want to asking for you to address is the textual similarity the textual similar that as we understand Martin the the approach that the court took there was not based on that particular language in the statute it was based on the sensitive considerations involving foreign policy and it was a very different context because there you had a plaintiff who was a member of the state militia a low-ranking member of the military objecting to a command coming from on high and courts throughout our history have been reluctant to directly intervene in the chain of command in that manner but in terms of Judge Bennett to get back to the second aspect of your question about whether we see room for any deference or discretion to the president here we don't have a problem with according the president some level of appropriate deference based upon his experience implementing federal law the problem as we see it is that there's really nothing to defer to here because the president has not even attempted defendants have made no attempt whatsoever to provide argument or evidence that they even contemplated more modest measures to the extreme response of calling in the National Guard and militarizing the situation and so I ask you oh sorry can I ask you to go back to I guess the first part of this answer where you were responding to Judge Sung and distinguishing Mott on the ground that it involves you know a foreign invasion and a militia a militiaman rather than somebody else challenging it and you know I agree those are both factual differences but how do you deal with you know Luther against Borden not very long after Mott you know seems to have read the opinion in a way that didn't attach significance to either of those distinctions I mean that Luther was not a not a foreign case was not about somebody in the chain of command and and they read there the court read it for this you know fairly broad preclusion of review of you know the president's decisions about when to call forth the militia so what do we do with that your honor I think that the court sitting today in 2025 should be quite cautious about relying on older authorities in this area given that the shifts over the years in the political question doctrine just disability doctrines but also given the historical development of the strong norm in this country against military involvement in civilian affairs so cases that predated the Posse Comitatus Act for example I think need to be looked at at least with caution before they're they're too readily or quickly applied to the circumstances of the sort we have here but that's I mean those are you know maybe maybe good arguments for the Supreme Court to reconsider those cases but you know they've told us repeatedly that when there is a case that you know is directly applicable to an issue even if we think it's been undercut by later developments and other areas of law or other statutes as you mentioned or other Supreme Court cases we're supposed to follow the applicable case and leave it to them to overrule it so I guess my question is what can we as a court of appeals do with that argument your honor I think for one thing you can look to the other case lower court cases around the country that have distinguished Martin in recent weeks and months in the Alien Enemies Act context as persuasive authority I mean I also think you can recognize that those those older cases you're mentioning did not consider statutory language identical to the third prong of the statute here or the government's extraordinary argument which I think really does reduce down to the position that if that the president can federalize National Guard forces as soon as he makes a judgment that civilian federal law enforcement officials cannot do the job as they've been doing it in ideal circumstances or face any obstacles or to put it another way as we understand the government's position on the third prong they essentially have a binary view of the world where there's world a where federal officials like ICE agents are enforcing the law as they prefer and then world b they encounter any obstacle and then the president can immediately reach for the most extreme possible measure on the table which is federalizing National Guard troops as we see it there are gradations in between those two worlds and at a minimum prong three requires the president to make a showing that he's at least contemplated alternative more modest measures before calling in the National Guard so so count so counsel even if if I were to agree with you that the position advanced by the government that there's no review we're wrong uh where in the jurisprudence of the take care clause or the language of this statute is the president with significant deference at at least required to required to have judicial review of whether he considered lesser measures where does that spring from even if we were to agree with you that we have some ability to review the president's actions your honor as we see it it comes from the plain text of the third prong of section 12406 which of course is one of the laws that the president has a duty to take care is faithfully executed and it says unable not just unable in general but unable with the regular forces to execute the laws of the United States and I'd point the court to opposing counsel's definition of regular forces offered before the district court this is from the district court transcript which I believe is available on the court we haven't it's that regular forces quote means everything other than the state national guard it could be local police it could be federal marshals it could be the marines now our position which I think is really quite modest is that given the enormous resources and personnel available to the federal government encompassed within that definition of regular forces there at least needs to be some consideration of whether there are more modest measures than calling for the national guard before taking that grave and extraordinary step and in terms of highlighting why that that step is so extraordinary why it's been so rare in our history I point the court to the amicus brief filed by high-ranking former military leaders including former secretaries of the navy and the army former four-star generals and admirals who have explained the grave threat to the country's democratic traditions of licensing the government to adopt the the expansive near limitless reading of section 12406 that it's articulated in this case as that brief explains this poses a risk makes it all too easy for a president to call forth the national guard to serve a domestic political policy agenda in a way that threatens to impugn call into question the historic neutrality impartiality integrity of the military in the eyes of the public council that brief seemed to offer a lot of reasons why the president's decision was should have been counseled against and that they wouldn't have agreed with it that it's bad for policy let's say but I think it stops short of saying the president couldn't do that couldn't make that decision is there something in that brief that you think was saying the president was not actually able to make this decision yes your honor in the sense that it highlights the great consequences of an overly expansive interpretation of section 120406 and that should inform the way that the court reads the statute but that's not the only significant consequence the court should bear in mind it should also consider the profound effect on our federal structure of government and the balance of power between states and the federal government our framers made the decision it's reflected in the text of article 1's militia clauses to generally leave to state governments control over the militia today the national guard what we see is that decision the wisdom of that decision has endured over the years and one of the most concrete ways to see that in this case is to look at the declarations filed in district court which detail the critical functions performed by the california national guard at the state level that's central to our claim of irreparable harm in this case of leaving the state in effect it's also central to the federalism concerns that we've raised that should animate the court's approach to construing section 12406. I'd also your honor to the extent it's relevant to the court's determination of the third prong section 12406 I'd like to push back quite forcefully on opposing counsel's suggestion that state and local leaders including law enforcement agents are unwilling or unable to address the situation on the ground in Los Angeles I think the factual record shows otherwise including the Santa Cruz declaration that opposing counsel relied heavily on we we would encourage the court to rely on that declaration because I think it really highlights all of the efforts that state and local law enforcement have been making in recent days to respond to the situation that includes making arrests I think the current number is around a thousand arrests there are thousands of state and local law enforcement officers that have been deployed local leaders have imposed a curfew in the affected areas between the hours of 8 p.m. and 6 a.m. there there are other steps that have been taken as well including using authority under state law to order unlawful assemblies and disperse crowds as necessary state and local law enforcement officials are well trained in crowd control and management of civil unrest and counsel I'm sure that all of your clients subscribe to what you put at page one of your opposition to the to the civil unrest in Los Angeles is a serious matter violence against government officers and property is unacceptable absolutely your honor and the the state and local leaders have roundly and repeatedly condemned this violence which includes you know episodes unrest not just directed against federal officials but against state and local law enforcement officials as well so it is a profound concern to the leaders of the state but the state is dealing with it local law enforcement agencies are doing their job of dealing with it and to to get back to a suggestion that judge miller made to opposing counsel which I agree with that in terms of evaluating kind of the baseline when considering an invocation of prong three of the statute it's worth stepping back and that we're talking about federal law enforcement agencies that regularly encounter dangerous conditions in the field when doing their work and so the question is is the delta so significant are we in a world that's so different from normal conditions as to justify an extreme measure like militarizing the situation and bringing in the national guard we don't think that the federal government has even made the first step at seriously attempting to satisfy that standard if I could your honors I'd like to turn to the through the governor requirements that the district court also applied we acknowledge that there is some ambiguity and the meaning of this requirement but we don't think it can credibly mean what the federal government suggests because what that suggests is that while the stat congress in 1908 added this language it can be satisfied according to defendants by not involving the governor in any way shape or form and then at the end of the process when the decision is made when the document the final document is issued to just slap a label saying through the governor at the top of the document what is the what is no the president I guess with the secretary of defense you know writes up the order sends it to the governor if the governor then you know looks at it says you know this is interesting sticks it in his drawer and goes out to lunch what happens then your honor I want to highlight just how far we are away from that I wish and I and I'm there's no no attempt to comply with it just hypothetically our position our position is that the the best understanding in light of uh our our you know general expectation in our system that when congress seeks to involve government officials it seeks to promote rather than undermining federalism and state sovereignty so we think best reading would be that the governor's consent is required but we don't think the court needs to go nearly that far to agree with us that there was a violation here because at a minimum we think that issuance to the governor requires notifying the governor of the federalization decision and asking him to issue it which would give the governor a chance to consult at least consult on the scope so where so where does the statute say that issuing it through the governor requires either the governor's consent or requires consultation uh with the governor is where in the text do you take that from your honor we take it from the plain meaning of through the governor so that's the first step what does it mean to be issued through the governor for the governor to issue it we think at a minimum that means that the governor needs to be informed of it and given the chance to issue it and here's why we think that the statute should be read to include at least a consultation opportunity because the defendant's contrary view would pose very serious constitutional questions so under their view they can just do the whole process without consulting the governor at all and then slap his name at the top of the document at the process that risks blurring the lines of political accountability in much the same way as the anti as the commandeering laws that were struck down by the supreme court in cases like prince and like murphy it essentially forces the governor to share in the political responsibility for absolutely if we were if we were to disagree with your reading and looked at this as a ministerial task that's in the statute um would there still have been more that uh the united states would have been required to do other than sending this to the adjutant who is the governor's subordinate and issues all orders in the name of the governor would there have had to have been something directly to the governor's email or mailed i'm not trying to be facetious here but if we disagree with you about consultation and consent was there anything more that needed to be done here as a technical matter in your view in our view yes your honor to issue it through the governor it needs to at least go to the governor but if i could i would like to take one more pass at persuading you that the federal government's interpretation just can't be right as i understand it they do present it as a purely ministerial requirement essentially a routing requirement to ensure that there's not command confusion in the event that the the state guard is transferred to federal authority the reason we don't think that can be right is there are other federal statutes most notably the insurrection act which similarly allow the transfer of the national guard to federal authority and pose the very same types of command chain of command confusion that defendants have highlighted here those statutes do not include the same through the governor language so congress would have had uh it must have had something else in mind when it deliberately chose to add this language to the statute in 1908 and i just wanted i mean it's a very roundabout way i mean of imposing a consultation requirement it seems like on your reading i mean they should have said you know orders for these purposes shall be issued after consultation with the governor or something like that this is a very indirect way of accomplishing that purpose if that was the purpose isn't it not so sure it's indirect your honor i think when congress uh imposed an issuance through the governor requirement they were contemplating good faith on both sides and that there would be some level of coordination involved and just one more point on this as evidence that our reading of the statute is correct i'd actually point you to the president's memorandum on june 7th itself which directed secretary hegseth to quote coordinate with the governors of the states that suggests that even the president saw this statute as imposing some type of consultation report coordination requirement of course secretary hegseth did not do so and what about i mean judge bennett alluded to this provision of state law a moment ago but just as a as a matter under principles of agency law if you have to notify someone or get someone's consent or hear him do something through someone that means you know someone or that person's agent and here i guess the military and veterans code section 163 of state law says that the adjutant general can issue orders in the name of the governor so it would seem like the state has made the adjutant general effectively the substitute for the governor in this context so why wasn't it enough that they sent it to that officer your honor that's not our understanding of that provision of state laws we understand that the adjutant general soul has an obligation to communicate and coordinate with and take orders from the state's chief executive and the commander-in-chief of the armed forces under the california constitution with respect to the national guard it's just after those decisions are made the adjutant general has authority to issue orders in in the name of the governor so we don't read it in the expansive way that our opponents do well all of his duties under section 163 are as prescribed by the governor and he shall issue all orders in the name of the governor i mean uh and this is a statute that's around for a while yeah it has your honor and as i mentioned we um we don't read it as the federal government does um i'd also point out just because the that state law may give the adjutant general certain authorities that doesn't mean that the president has certain authority to issue orders through the name of the governor under federal law um and we know from the plain text of section 12406 that the that congress knew how to allow orders to be issued through a commander commanding officer because that is the process prescribed with respect to the national guard of the district of columbia but that's but that prescription is federal law it is your honor i mean the just the dc prescription uh the i i take the reason mentioned that there is because that is a matter of federal law over which the congress has control my point is simply that the text illustrates that congress knew how to allow an order to be issued through a commanding officer instead of a chief executive and it didn't do that with respect to the governors of the 50 sovereign states council i want to go back to the um what you're in terms of the conditions uh necessary for the president to exercise its calling forth power as delegated by the statute are you i hear you arguing that the exigency required under subsection three essentially the inability to execute the laws with the regular forces um wasn't met i hear you arguing that the president cannot rely on that subsection based on anything it said in the executive order or um that it wasn't properly invoked or relied on i hear you arguing that we can and should consider the evidence put before us put forth before the district court not that we would be limited to what's in the executive order so are you conceding those points um if i understand the question i certainly acknowledge that yes the district court should have been looking at the evidence put forward by the federal government to try to satisfy the factual predicates required under section 12406 and as the district court rightly concluded the federal government hadn't had failed to provide argument or evidence that would even really make a serious attempt at satisfying that predicate because it didn't even suggest that it contemplated more modest measures than calling in the national guard i'll try to clarify my question you are not arguing that we would be limited only to what was stated in the executive order to determine whether the factual basis is there is that correct i see that's that's correct and you're not arguing that the executive order failed to rely on subsection 3 or invoke subsection 3 is that correct that's not an argument that we've made at least at this preliminary stage of the litigation that's that's right although i do think it's notable that the federal government has principally relied in its papers and in the executive order on on prong two to do think suggests that they didn't make they understood they didn't make a serious effort to show evidence or argument as to prong three okay your honors with permission of the court i know that i've gone past my time i would like to very briefly address irreparable harm that's fine counsel please do so thank you your honor we would ask the court to uh uh reject the government's motion for a stay pending appeal because every day that the stay remains in effect it causes these two principal forms of irreparable harm that i'd like to highlight one is the concrete harm to important state functions that are not happening because of the diversion of now fully one-third of california's national guard troops that are available to the president's unlawful mission on the streets of los angeles that's causing harm in terms of not having troops on the ground ready to respond to emergencies especially wildfires which is especially problematic as we enter the peak of wildfire season which experts believe will is likely to be especially harmful and and severe this year um the ec declarations again just briefly your honors detail the many important functions beyond wildfire prevention emergency response drug interdiction performed by our national guard units when they're not federalized beyond that every day that this order remains in effect it is causing harm to our nation's broader democratic tradition of separation of the military from civilian affairs and that is not just a problem for the 60-day presumptive deployment here which could be extended further by secretary hegseth it's a problem because it sets a president a precedent for this president and future presidents to take similar actions going forward and just in closing your honors in considering the legality of the president's actions and the request for a stay it's important to bear in mind that sheer scope of the president's order here we've been focused today on the conditions in los angeles but the order is not limited the president's order is not limited to los angeles or even california there's no limit uh in terms of geography whatsoever it's not limited in the number of troops that can be called up it's not limited in the duration that those troops can be called up for and there is no real limit imposed on the scope of the mission it's not limited to assistance with ice enforcement it also allows for protection of quote other u.s government personnel who are performing federal functions that's essentially anything the federal government is doing that is staggeringly broad in scope in the state's view it is plainly unlawful inconsistent with our nation's traditions we would respectfully ask the court to deny the extraordinary motion for a state pending appeal all right thank you uh mr shumate you have a time left thank you your honor if i may i'd like to make three quick points in rebuttal and i want to start first with the martin case which there's some discussion of that case the point i want to make is that that decision is both controlling and it remains good law it's controlling because the statute in that case is very similarly structured to the statute at issue here the act of 1795 again started with a wherever clause and it had one condition invasion and if that condition was met the president could call forth the militia here the statute also starts with a whenever clause it also conclude includes the invasion problem but it also has two additional elements and it concludes with a delegation to the president that he may call forth the guard if in his judgment it's necessary so i think in deciding a reviewability question you look at the language of the statute not factual distinctions on the ground yes in that case it was an invasion it was a foreign policy matter but this statute also that's before you hear title 10 also invokes foreign affairs powers and the president's domestic um powers as well and it's also remains good law right we cited the dalton case which was a 1990s decision that invoked the where a statute is drawn in a way that delegates broad discretion to the president courts don't just defer to the president the president's judgment courts don't review the president's judgment and that's what we have here and in that case it was a domestic matter not a foreign policy matter so martin would not be just limited to foreign policy matters the second point i wanted to make was the easiest path to a decision here is on the third problem president made a determination that he is unable based on with the regular forces to execute the laws of the united states the record certainly bears that out not only in his proclamation but also in the declarations make clear the plaintiffs have conceded there is civil unrest in los angeles but not just ordinary civil unrest civil unrest is targeting federal law enforcement officials and designed and aimed to prevent them from carrying out their duties the court should at the president's judgment under prompt three and then finally on the through language i think the plaintiffs have an extraordinarily dangerous interpretation of that statute under their reading of the statute governor newsom could pocket veto the president's orders not convey them and wait for somebody to come down to sacramento and consult with him before he issues that order that is not what the statute says the statute says through the governor doesn't say by the governor we've cited other statutes that are similar that contain the consultation language this statute does not contain that language in some your honors we would ask you to uh grant our motion for a state pending appeal if you deny our state pending appeal we would ask the court to give us an opportunity to seek emergency relief from the supreme court thank you all right we uh we thank uh all counsel for their helpful arguments uh especially on an expedited basis we thank counsel for appearing uh remotely i would also simply note um that the panel is cognizant of the fact that you have another hearing set on friday before judge briar and uh again thank you and with that the court is adjourned
judges: BENNETT, MILLER, SUNG